IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE DENISE BENNETT,

Plaintiff,

v. 1:16-cv-00399-LF

NANCY A. BERRYHILL[1], Acting Commissioner of the Social Security Administration,

Defendant.

**MEMORANDUM ORDER AND OPINION**

THIS MATTER comes before the Court on plaintiff Michelle Denise Bennett's Motion to Reverse and Remand for a Rehearing (Doc. 19), which was fully briefed on April 17, 2017. Docs. 21, 22, 23. The parties consented to my entering final judgment in this case. Docs. 5, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of non-examining state agency medical consultant Dr. Scott Walker. The Court therefore GRANTS Ms. Bennett's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

## III. Background and Procedural History

Ms. Bennett, currently age 34, was in self-contained special education throughout school. AR 153, 370.[4] She earned her high school diploma when she was 25, through a program with the New Mexico Division of Vocational Rehabilitation ("DVR"). AR 486, 502. DVR also assisted her in obtaining a job at Walmart, where she worked as a sales associate and cashier for approximately five years. AR 220, 486, 502. Ms. Bennett filed an application for disability

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 11-1 through 11-7 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the upper right-hand corner of each page, rather than to the CM/ECF document number and page.

insurance benefits on June 11, 2010—alleging disability since May 12, 2010 due to epilepsy and a learning disability. AR 153–59, 219. The Social Security Administration ("SSA") denied her claim initially on November 19, 2010. AR 39–42.[5] The SSA denied her claims on reconsideration on August 8, 2013. AR 38. Ms. Bennett requested a hearing before an ALJ. AR 104. On August 27, 2014, ALJ Ann Farris held a hearing. AR 479–512. ALJ Farris issued her unfavorable decision on December 1, 2014. AR 12–31.

The ALJ found that Ms. Bennett was insured for disability benefits through December 31, 2015. AR 18. At step one, the ALJ found that Ms. Bennett had not engaged in substantial, gainful activity since May 12, 2010. *Id*. Because Ms. Bennett had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 18–20. At step two, the ALJ found that Ms. Bennett had the following severe impairments: "a mild intellectual impairment and an intermittent explosive disorder." AR 18. Also at step two, the ALJ found that Ms. Bennett had the following nonsevere impairments: "epilepsy, obesity, back pain from motor vehicle accidents and falls, injuries to her ribs and ankles from falls, depression disorder, and mood instability." *Id*. At step three, the ALJ found that none of Ms. Bennett's impairments, alone or in combination, met or medically equaled a Listing. AR 20–25. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Bennett's RFC. AR 25–29. The ALJ found that:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid hazards, and is limited to simple routine work tasks with reasoning level 1. The claimant should not be required to have contact with the public, and should have only occasional superficial contact with co-workers.

[5] Ms. Bennett also filed an application for Supplemental Security Income on May 18, 2010, which the SSA denied on June 18, 2010 because Ms. Bennett had assets worth more than $2,000. AR 160.

AR 25.

At step four, the ALJ concluded that Ms. Bennett was unable to perform her past relevant work as a cashier/salesperson. AR 29. The ALJ found Ms. Bennett was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy—such as bakery worker, harvest worker, and floor worker. AR 30.

Ms. Bennett requested review by the Appeals Council, which, on March 10, 2016, denied the request. AR 5–12. Ms. Bennett timely filed her appeal to this Court on May 8, 2016. Doc. 1.

## IV. Ms. Bennett's Claims

Ms. Bennett raises two arguments for reversing and remanding this case: (1) the ALJ impermissibly picked and chose from the limitations noted in the opinion of non-examining state agency consultant Dr. Scott Walker, and (2) the ALJ impermissibly picked and chose from the limitations noted in the opinion of consultative examining psychologist Dr. Michael Emery. Because the Court remands based on the ALJ's failure to properly analyze the opinion of Dr. Walker, the Court does not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[6] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not

[6] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017.

adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir.

2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

**A. The ALJ Erred in Failing to Either Incorporate, or Explain Why She Rejected, Limitations Noted in the Medical Opinion of Dr. Scott Walker.**

Ms. Bennett argues that the ALJ failed to account for the numerous moderate limitations in Dr. Walker's Mental Residual Functional Capacity Assessment ("MRFCA"). Doc. 19 at 13–14. She further argues that the ALJ was required to either include all of the moderate limitations noted by Dr. Walker, or to explain why she did not adopt them. *Id*. at 15. The Commissioner responds that "the ALJ appropriately considered the functional limitations described by Dr. Walker in the Section III" and was not required to discuss each of the moderate limitations noted in Section I. Doc. 21 at 5–6 (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) and SSR 96-6p, 1996 WL 374180, at *1–*2).[7] The Court finds the Commissioner's arguments unpersuasive, and agrees with Ms. Bennett that the ALJ was required to either include, or to explain her reasons for rejecting, the moderate limitations noted in Section I of Dr. Walker's opinion.

As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting nearly identical arguments, the Program Operations Manual System ("POMS"),[8] regulations, and case law require the ALJ to address all of Dr. Walker's findings, not just those in Section III. *See Silva v. Colvin*, No. 15-cv-603 SMV, Doc. 24 at 11–18 (D.N.M., Aug. 25, 2016). Specifically, "findings of fact made by State agency . . . psychological consultants and other

[7] SSR 96-6p was rescinded and replaced by SSR 17-2p, effective March 27, 2017.

[8] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

program physicians and psychologists become opinions at the administrative law judge . . . level[] of administrative review . . . and requires administrative law judges . . . to consider and evaluate these opinions when making a decision in a particular case." POMS § DI 24515.013.[9] Further, "[b]ecause State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR [§§] 404.1527(f) and 416.927(f) (both effective Aug. 24, 2012 through March 26, 2017) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* And although ALJs also "must consider and evaluate" a program physician's or psychologist's Section III RFC, Section I findings are not exempt from this scrutiny. *See id.*

Social Security regulations also require ALJs to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . ." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (both effective Aug. 24, 2012 through March 26, 2017). "Evidence" includes "findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists . . ., and opinions expressed by medical experts or psychological experts that we consult based on their review of the evidence in your case record." 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii) (both effective Apr. 20, 2015

---

[9] Archived on April 3, 2017 due to March 27, 2017 "Revisions to Rules Regarding the Evaluation of Medical Evidence," per POMS Instruction DI 24515 TN 13.

through March 26, 2017). Like the POMS, the regulations do not exempt the Section I findings from an ALJ's consideration and evaluation. *See id.*

Case law also requires ALJs to consider the entire MRFCA, not just the Section III findings. The Court has surveyed the cases from the Tenth Circuit that expressly address the distinction between Section I and Section III findings. Two cases, *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), arguably could be interpreted in the Commissioner's favor, but the others could not. *Compare Smith*, 821 F.3d at 1269 n.2[10] ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. . . . This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."), *and Sullivan*, 519 F. App'x at 989 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings

[10] In *Smith*, the court held that the ALJ did not err in failing to repeat moderate nonexertional limitations from a medical opinion because the limitations were incorporated into the RFC. 821 F.3d at 1269. To the extent that *Smith* suggests that an ALJ may ignore a consulting psychologists Section I findings, that suggestion is inconsistent with the Tenth Circuit's earlier decisions in *Haga*, 482 F.3d at 1208 ("ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others"), and in *Frantz*, 509 F.3d at 1302–03 ("ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion"). However, one panel of the court cannot overrule another, *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005), and earlier panel decisions control over later ones, *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014).

versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC). While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for the Section I findings. The case law therefore requires

ALJs to consider all of the findings made in medical source opinions, including the Section I findings.

Thus, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why she adopted some of Dr. Walker's limitations while rejecting others. The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Walker in the RFC assessment. *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

In Section I of his August 7, 2013 MRFCA, Dr. Walker found that Ms. Bennett had the following limitations in all four broad categories:

**<u>Understanding and Memory</u>**

- Moderate limitation in the ability to remember locations and work-like procedures;
- Moderate limitation in the ability to understand and remember very short and simple instructions;
- Marked limitation in the ability to understand and remember detailed instructions;

**<u>Sustained Concentration and Persistence</u>**

- Moderate limitation in the ability to carry out very short and simple instructions;
- Marked limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them;
- Moderate limitation in the ability to make simple work-related decisions;

- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

**Social Interaction**

- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;

**Adaptation**

- Moderate limitation in the ability to respond appropriately to changes in the work setting;
- Moderate limitation in the ability to be aware of normal hazards and take appropriate precautions;
- Moderate limitation in the ability to travel in unfamiliar places or use public transportation;
- Moderate limitation in the ability to set realistic goals or make plans independently of others.

AR 375–76.

In Section III of his MRFCA, Dr. Walker found that:

> [C]laimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

AR 377.

The ALJ discussed Dr. Walker's opinion in two paragraphs of her RFC analysis. The first paragraph discusses limitations in the first two categories assessed on the MRFCA—"understanding and memory" and "sustained concentration and persistence":

> Dr. Walker opined that the claimant can understand, remember and carry out simple instructions, and make simple decisions (Ex. B 1 OF /3), while Dr. Emery opined that her memory and understanding of instructions and directions is markedly impaired. (Ex. B9F/3). The claimant's numerous educational and work accomplishments are consistent with Dr. Walker's opinion. Although she was fired from her job at Walmart after working there for five years, she testified that she was fired because of a temper outburst (Ex. B9F/1), not for incompetence. In addition, she not only takes classes, but recently finished a term. (Ex. Bl4F/21). I

> accept Dr. Walker's opinion and give it greater weight than that of Dr. Emery. It is consistent with the longitudinal record and with the residual functional capacity restriction that limits the work that the claimant can do to reasoning level 1, which addresses her cognitive limitations and the resulting frustration that the claimant describes.

AR 28. The second paragraph discusses limitations in the areas of "social interaction" and "adaptation":

> Dr. Walker also opined that the claimant is able to interact adequately with co-workers and supervisors and respond appropriately to changes in a routine work setting. (Ex. lOF/3). Dr. Emery opined that her social interaction is markedly to extremely impaired due to frustration tolerance and intermittent explosive disorder. (Ex. B9F/3). Neither opinion is entirely consistent with the record of evidence. The claimant's documented difficulties interacting with her supervisor, associates and customers, schoolmates, and family do not support Dr. Walker's opinion. The fact that the claimant demonstrated her ability to maintain social relationships within her peer group do not entirely support Dr. Emery's opinion. I give some weight to Dr. Emery's opinion, and lesser weight to Walker's Dr. [sic] opinion. I afford some weight to the sister's opinion, which appropriately recognizes that the claimant is able to work under circumstances that accommodate her mental limitations and because [it] is consistent with the residual functional capacity restriction that precludes the claimant's contact with the public and limits her to occasional superficial contact with co-workers. I afford significantly less weight to the mother's opinion, because she describes the claimant's limitations under circumstances that require interaction with supervisors, co-workers, the public, and others. The mother's opinion is also given less weight because it does not account for the fact that the claimant has no physical limitations that [are] inconsistent with work activities.

AR 28.

In this case, Dr. Walker's Section III summary failed to sufficiently account for the moderate limitations assessed in Section I. The parties do not address each omitted limitation individually. The Court will not do so either, as remand is required given that the ALJ omitted at least one critical limitation from the RFC without adequate discussion. Specifically, in Section I, Dr. Walker found that Ms. Bennett had a "moderate limitation" in her ability "to accept instructions and respond appropriately to criticism from supervisors." AR 376. However, in Section III, without any narrative explanation, Dr. Walker found that Ms. Bennett

could "interact adequately with co-workers and supervisors." AR 377. Dr. Walker's Section III finding conflicts with his Section I finding. Dr. Walker's Section III findings fail to account for his Section I finding that Ms. Bennett had a "moderate limitation" in her ability "to accept instructions and respond appropriately to criticism from supervisors." AR 376–77. A claimant's ability to interact with supervisors is a work-related mental ability that is critical to all work, and the ALJ must adequately address it in the RFC.[11] *See* POMS 25020.010(B)(2)(c). Because Dr. Walker's Section III narrative does not incorporate his Section I finding of a moderate limitation in a critical area, and because the ALJ failed to explain why she rejected this limitation, remand is required. *See Carver*, 600 F. App'x at 619.

---

[11] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

### B. The ALJ Failed to Adequately Address Ms. Bennett's Limitation in Her Ability to Interact with Supervisors.

The Commissioner points out that the ALJ did not fully adopt Dr. Walker's Section III findings in the areas of "social interaction" and "adaptation." Doc. 21 at 7. The Commissioner also correctly notes that the ALJ acknowledged that Ms. Bennett had "documented difficulties interacting with her supervisor, associates and customers, schoolmates, and family." *Id*. The Commissioner asserts that the ALJ found these documented difficulties were adequate reasons for the ALJ to find Ms. Bennett more limited than Dr. Walker's Section III finding that Ms. Bennett could "interact adequately with co-workers and supervisors." Doc. 21 at 7; AR 28, 377. The Court agrees. However, these arguments are not sufficient to salvage the ALJ's flawed decision.

While the ALJ's decision addresses some of Ms. Bennett's "social interaction" limitations, it fails to adequately address the limitation in her ability to interact with supervisors. Among the possible areas of "social interaction" limitations assessed on the MRFCA are: (1) the ability to interact with the **general public**; (2) the ability to accept instructions and respond appropriately to criticism from **supervisors**; (3) the ability to get along with **coworkers and peers** without distracting them or exhibiting behavioral extremes. *See, e.g.*, AR 376 (emphasis added). The ALJ, as Ms. Bennett concedes, adequately addressed her "moderate limitation in the ability to interact appropriately with the general public" by limiting her RFC to no contact with the public. Doc. 19 at 13; AR 25. In addition, the ALJ, as Ms. Bennett also concedes, adequately addressed her "moderate limitation in ability to get along with coworkers and peers" by limiting her RFC to occasional superficial contact with co-workers. Doc. 19 at 13; AR 25. The ALJ, however, failed to address Ms. Bennett's limitation in her ability to "accept

instructions and respond appropriately to supervisors," a limitation that is clearly documented in the record.

The medical opinions indicate that Ms. Bennett has at least a moderate limitation in her ability to interact with supervisors. Dr. Walker noted in Section I of his MRFCA that Ms. Bennett had a moderate limitation in this area. AR 376. The ALJ did not discuss Dr. Walker's Section I finding of a moderate limitation. The ALJ discussed only Dr. Walker's Section III conclusion that Ms. Bennett was "able to interact adequately with . . . supervisors." AR 28. Dr. Emery found Ms. Bennett's "social interaction [] markedly to extremely impaired due to poor frustration tolerance and intermittent explosive disorder."[12] AR 372. The ALJ found that the record did not support either Dr. Walker's Section III finding of no impairment, or Dr. Emery's finding of a marked impairment. AR 28. Despite the fact that the evidence of record clearly demonstrates that Ms. Bennett has at least a moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors, the ALJ failed to address this limitation in formulating Ms. Bennett's RFC. It is unclear what level of impairment the ALJ found in regards to Ms. Bennett's ability to interact with supervisors. The ALJ acknowledged Ms. Bennett's "documented difficulties interacting with her supervisor" and noted that Ms. Bennett was fired from her job at Walmart "because of a temper outburst." AR

[12] "Intermittent explosive disorder involves repeated, sudden episodes of impulsive, aggressive, violent behavior or angry verbal outbursts in which you react grossly out of proportion to the situation." https://www.mayoclinic.org/diseases-conditions/intermittent-explosive-disorder/basics/definition/con-20024309 (last accessed Nov. 13, 2017). Signs of intermittent explosive disorder include "road rage, domestic abuse, throwing or breaking objects, or other temper tantrums." *Id*. "Explosive eruptions occur suddenly, with little or no warning, and usually last less than 30 minutes. These episodes may occur frequently or be separated by weeks or months of nonaggression. Less severe verbal outbursts may occur in between episodes of physical aggression." https://www.mayoclinic.org/diseases-conditions/intermittent-explosive-disorder/basics/symptoms/con-20024309 (last accessed Nov. 13, 2017)..

28.[13] But the ALJ's decision does not explicitly find any limitation in Ms. Bennett's ability to interact with supervisors. The RFC also contains no limitation in her ability to interact with supervisors. This error requires remand. The ALJ must incorporate, or explain why she rejected, the documented limitation in Ms. Bennett's ability to interact with supervisors.

## VI. Conclusion

The ALJ erred in failing to incorporate several moderate limitations assessed by Dr. Scott Walker into Ms. Bennett's RFC without explanation. In particular, the ALJ failed to explain why she rejected the moderate limitation in Ms. Bennett's ability to interact with supervisors. The Court remands so that the ALJ can explain the evidentiary basis for her RFC determination.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

Laura Fashing
United States Magistrate Judge
Presiding by Consent

[13] The testamentary evidence also supports Ms. Bennett's difficulties interacting with supervisors. Ms. Bennett testified, "People tell me what to do, and I don't like understand it, and I get mad. I blow up or I walk away." AR 499. She testified that when her Walmart supervisor reprimanded her for not wearing her name badge, she "lost her temper." AR 488, 497. She testified that she was fired from Walmart for "having a bad attitude" after a supervisor asked her to enter some notes, which she did not think was her responsibility, and she "lost her temper." AR 487–88. Ms. Bennett's sister stated that Ms. Bennett has "anger issues" and "does not take criticism well," and that it is "very hard for her to deal with someone telling her what to do because she cannot control her attitude." AR 264. Ms. Bennett's mother, who worked as a manager at the same Walmart as Ms. Bennett, testified that Ms. Bennett's supervisor would often enlist her help to help get Ms. Bennett "under control" and to get her to understand that she needed to "stop losing her temper" at work. AR 500, 503, 507. Ms. Bennett's mother testified that Ms. Bennett was only able to keep her job at Walmart for five years due to her main supervisor giving her a lot of extra chances and doing "a lot of backing for her." AR 503.